UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARC THOMPSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-2464 |
| | § | |
| CAPSTONE LOGISTICS, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Pending before the Court in the above referenced action to recover unpaid overtime under 29 U.S.C. § 207 at one and one half times their regular rate of pay and minimum wages under 29 U.S.C. § 206 for the Fair Labor Standards Act ("FLSA"), are (1) Defendants Capstone Logistics, L.L.C. ("Capstone") and LMS Intellibound, L.L.C.'s Motion for Partial Summary Judgment as to Plaintiffs' Calculation of Damages (Doc. 114); (2) Plaintiffs Marc Thompson, Brandon White, Jeffrey Grubbs, Desmond Pollard, DeVon Barnes, Byron Collins, Robert Ross, Immanuel Edens, Damien Mathis, and Charles Fortune's Cross Motion for Partial Summary Judgment as to Plaintiffs' Calculation of Damages (Doc. 130); (3) Defendants' Motion to Sever (Doc. 168); (4) Defendants' Motion for Summary Judgment on Plaintiffs' Claims (Doc. 170); (5) Plaintiffs' Partial Motion for Summary Judgment (Doc. 173); (6) Defendants' Motions to Strike (Docs. 189 and 206); and (7) Plaintiffs' Motion for Leave to File Reply (Doc. 202).

Plaintiffs performed manual labor unloading pallets of groceries from trucks owned by Defendants' clients, for which they were paid based on the number and weight of the trucks they unloaded. In their Second Amended Complaint, Plaintiffs claim that Defendants failed to accurately pay them for their work on an hourly basis. Among specific claims, Plaintiffs allege that Defendants underreported the number of hours Plaintiffs actually worked each week in

subtracting time for meal breaks even though Plaintiffs worked through them, failing to count the time Plaintiffs were on duty waiting to unload trucks or perform other tasks for Defendants, and consistently clocking out the unloaders before they finished working.

## I. Motions for Summary Judgment

*Standard of Review*

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir.

1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc..* 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

## A. Defendants' Motion for Summary Judgment on Plaintiffs' Claims (Doc. 170)

*The Parties' Arguments*

Defendants moved for summary judgment on all the plaintiffs' claims. Doc. 170. Defendants argue that Plaintiffs cannot succeed on their minimum wage or overtime claims because they cannot identify any work week during which Defendants paid them less than minimum wage for hours worked or failed to pay them overtime compensation for hours worked in excess of 40 hours. Defendants argue that Defendants' time records and pay records show that Defendants paid Plaintiffs at least minimum wage for all hours worked during each work week. In addition, Defendants contend that the evidence demonstrates that Plaintiffs reported an extensive number of overtime hours during their employment and were appropriately compensated by Defendants for those hours. Since, Defendants argue, Plaintiffs cannot identify any single workweek for which Defendants failed to pay them minimum wage or failed to properly compensation them for overtime, Plaintiffs' claims fail as a matter of law and summary judgment should be granted in favor of Defendants.

In response, Plaintiffs argue that Defendant Capstone did not accurately record all of the time that Plaintiffs spent at work. In other words, while Defendant argues that it paid Plaintiffs in accordance with the time records kept, Plaintiffs argue that those records are inaccurate; not all hours were recorded, so not all hours were paid. Plaintiffs provide several sources of evidence that Defendant's time records do not accurately reflect the actual hours Plaintiffs worked. Furthermore, Plaintiffs point to case law stating that when employers fail to keep accurate time records, Plaintiffs have a relaxed burden to show their precise damages. *See, e.g., Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds,* Portal–to–Portal Act of 1947, Pub. L. No. 49–52, § 5, 61 Stat. 84, 87 (May 14,

1947) (codified at 29 U.S.C. § 216(b)).

To support their contention that their employer's records are inaccurate or inadequate, Plaintiffs argue, among other things, that Defendant routinely clocked Plaintiffs out for meal breaks that they did not take. In his deposition, Alton James stated "whether you take the lunch or not, 30 minutes will be deducted from your actual time worked that day."[1] James was a "team lead" for Capstone whose duties included "making sure everyone was punched in right on time."[2] Additionally, Plaintiffs bring the accuracy of Defendant's time records into dispute by presenting evidence of changed time entries found in Capstone's self-performed audit of the time records. Doc. 172, Ex. 54. While Defendant argues these changes were *de minimis*, Plaintiffs argue that these edits create a material issue of genuine fact as to whether the time records were kept accurately in compliance with the FLSA.

Finally, Defendants argue that even if there is a question about the accuracy of Defendants' records, Plaintiffs cannot show the amount and extent of uncompensated work as a matter of just and reasonable inference. In order to survive summary judgment, Plaintiffs must not only create a genuine issue of material fact about the accuracy of Defendants' business records but must also show that they can create a genuine issue of material fact about "the amount and extent of [uncompensated] work as a matter of just and reasonable inference." *Ihegword v. Harris Cty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) (upholding district court's decision granting summary judgment because "an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference"). Defendants argue that Plaintiffs here cannot establish the amount of overtime they supposedly worked as a matter of

---

[1] *See* Doc. 133-3 at 130, 160 and corresponding timestamps from James's Certified AV Record of the Cited Testimony, available at Doc. 200-6.
[2] *Id.* at 16.

just and reasonable inference because they have changed their sworn testimony regarding the amount of uncompensated overtime they worked no fewer than four times.

In response, Plaintiffs argue that they have met their burden of showing as a matter of just and reasonable inference that they worked hours for which they were not properly compensated. When an employer does not keep accurate time records, "imprecise evidence on quantum can provide a 'sufficient basis' for damages." *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980). Plaintiffs point to their own recollections of the hours they actually worked, as well as evidence such as that regarding the allegedly falsified lunch breaks, to create a reasonable inference that they worked some hours for which they were not compensated.

***Court's Decision***

The Court finds there is a genuine issue of material fact as to the accuracy of Defendants' time records. Furthermore, the Court finds that Plaintiffs' claims are supported by more than merely "vague, conclusory statements, unsupported by any facts." *Diaz v. Castro,* 122 F. Supp. 3d 603, 617 (S.D. Tex. 2014). In addition to their own testimony, Plaintiffs have presented evidence from employees who were responsible for keeping the time records that places the accuracy of the records into question, as well as concrete evidence produced by Capstone's audit that adjustments were made to the time records.[3] These facts substantiate Plaintiffs' claims and make them more than just "bald assertions." *Cf. Goal v. Retzer Restaurants, Inc.,* No. 5:09-CV-00137 JLH, 2010 WL 4867966, at *9 (E.D. Ark. Nov. 3, 2010).

The inconsistencies in Plaintiffs' testimonies are not enough to defeat their claims as a matter of law. *See Kuebel v. Black & Decker Inc.*, 643 F. 3d 352, 364 (2d Cir. 2011) ("[W]hatever inconsistency may exist between the estimates offered by [the plaintiff] during his

---

[3] *See, e.g.,* Doc. 133-3 at 130, 160 and corresponding timestamps from James's Certified AV Record of the Cited Testimony, available at Doc. 200-6

deposition and those provided in his declaration, it is at most the type of inconsistency that the [defendant] should test through cross-examination at trial and allow the jury to weigh in determining the credibility of [the] plaintiff's testimony in support of his claims."). Even when the plaintiffs are unable to allege with specificity the weeks during which they worked overtime and were not properly paid, there can nevertheless be a sufficient basis to withstand summary judgment. *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 751–53 (S.D. Tex. 2006).

The Court finds that Plaintiffs have met their burden at this stage; it is not an onerous one. Plaintiffs have shown there is a material factual dispute about whether Plaintiffs were properly compensated for their work under the FLSA, precluding a grant of summary judgment. Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' Claims (Doc. 170) is denied.

### B. Plaintiffs' Motion for Partial Summary Judgment (Doc. 173)

Plaintiffs' also filed their own motion for summary judgment on several issues. First, Plaintiffs request a summary judgment ruling that Capstone violated its duty under the FLSA to accurately record Plaintiffs' time at work. As discussed above, the record provides conflicting evidence as to whether or not the time records are accurate and in compliance with the FLSA. For example, some deposition testimony indicates that lunch breaks were accurately recorded while other deposition testimony contradicts that assertion. *See* Doc. 187 at 31. Since there is a genuine issue of material fact as to the accuracy of the time records, summary judgment on this issue is denied. Additionally, Plaintiffs seek summary judgment that Defendants knew Plaintiffs performed overtime work off the clock and willfully chose not to pay them for that time. Since there is a material factual dispute about whether overtime work was performed off the clock at all, summary judgment as to Defendants' knowledge of any alleged uncompensated work is

denied. Finally, as will be discussed below, whether Defendants miscalculated wages requires a finding of fact as to whether the employees had the required level of understanding under 29 C.F.R. § 778.318(c), precluding summary judgment on this issue. Therefore, Plaintiffs' Motion for Partial Summary Judgement on these issues is denied.

C. **Defendants' Motion for Partial Summary Judgment on Plaintiffs' Calculation of Damages (Doc. 114) and Plaintiffs' Cross Motion for Partial Summary Judgment on Plaintiffs' Calculation of Damages (Doc. 130)**

*Parties' Arguments*

The parties dispute the proper way to calculate Plaintiffs' damages if it is found that Plaintiffs worked hours for which they were not compensated and are owed wages for those hours. Defendants argue that Plaintiffs are entitled to straight time for all hours worked and an additional "half-time premium" for any hours worked over 40 hours per week. In their motion, Defendants correctly state how wages are calculated under 29 C.F.R. § 778.318(c).[4] Section 778.318(c) allows a worker's nonproductive hours to be considered compensated by the production earnings when "it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours." Plaintiffs disagree that the method described in 29 C.F.R. § 778.318(c) is applicable to this situation because it was not "understood" by the parties that the money earned unloading trucks would serve to compensate the nonproductive hours spent waiting for loads to arrive.

Plaintiffs argued in their complaint and presented evidence that no such understanding or agreement ever occurred, and therefore, the scheme outlined in Subsection C does not apply and

---

[4] Under 29 C.F.R. § 778.318(c), where the compensation for unloading the trucks is understood to also cover waiting time, the regular rate is calculated by taking the total amount of money earned by unloading and dividing it by total number of hours worked. If that rate comes out to be under minimum wage, it is increased to minimum wage. The regular rate is then multiplied by total number of hours worked and that amount is paid to the worker. In addition to being paid the regular rate for all hours worked, the employee is paid an extra one-half the regular rate per hour worked in excess of 40. In total, for each week, the worker is paid the regular rate for the first 40 hours of work, and one and one-half times the regular rate for each hour of work over 40.

Plaintiffs were not properly compensated for their waiting time.[5] Doc. 55 at 7, Doc. 130 at 24-27.[6] Plaintiffs argue in their cross motion that instead, 29 C.F.R. § 778.318(b) applies to this employment situation.[7] Subsection (b) provides:

> The parties may agree to compensate nonproductive hours worked at a rate (at least the minimum) which is lower than the rate applicable to productive work. In such a case, the regular rate is the weighted average of the two rates. . . .In the absence of any agreement setting a different rate for nonproductive hours, the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of 40.

Neither party argues that there was an agreement to compensate the waiting hours at a special, lower rate. Doc. 130 at 20. However, Plaintiffs allege that wages should be calculated according to the latter part of 29 C.F.R. § 778.318(b), which provides that "in the absence of any agreement setting a different rate for nonproductive hours," the regular rate is calculated by dividing the total earnings by number of hours of *productive* work (as opposed to by the total number of hours worked, productive and non-productive). The worker is then paid the "regular rate" for all hours worked, and a bonus of one-half the regular rate for each hour worked in excess of 40 per week.

***Court's Decision***

The dispute here is whether Plaintiffs' unproductive time should have been independently

---

[5] Defendants argue that summary judgment is appropriate on this issue because Plaintiffs "admit" to being paid on a production or piece-rate basis. However, there can still be a question of fact as to whether the rule in 29 C.F.R. § 778.318(c) applies to this particular situation; just because Plaintiffs acknowledge they are paid on a piece-rate basis does not automatically clear up confusion about how their "regular rate" is calculated. The example in 29 C.F.R. § 778.111(a) cited by Defendants demonstrates a circumstance where employees work on a piece-rate basis but also have a separate hourly rate for nonproductive work. Doc. 115 at 9.

[6] *See also* corresponding timestamps from the Certified AV Record of Smith's Cited Testimony, available at Doc. 200-7.

[7] Plaintiffs unnecessarily confuse the issue by suggesting that the methods in 29 C.F.R. § 778.318(b) and 29 C.F.R. § 778.111 result in different rates of overtime pay. Doc. 130 at 10. This is not true. Under both schemes, workers are paid a "regular rate" for the hours they work up to 40. For each hour worked in excess of 40 per week, employees receive a total hourly compensation of their regular rate plus an overtime premium of one half the regular rate, meaning that workers are paid a total of one and one half times their hourly rate for overtime work. The difference in methods comes with how the base, "regular rate" is calculated.

compensated rather than just being counted and included as part of the denominator when calculating the worker's "regular wage." If the facts show that Plaintiffs agreed that their waiting time would be counted but not independently paid, 29 C.F.R. § 778.318(c) applies and Defendants' method of calculating the regular hourly wage and overtime wage is correct. If the facts show that no such understanding existed, 29 C.F.R. § 778.318(b) may apply instead.

Other courts have found that summary judgment is not appropriate when there is a genuine dispute about the existence of an agreement that workers' piece-rate compensation is intended to compensate them for all productive and nonproductive work. *See Colindres v. QuietFlex Mfg.,* 427 F. Supp. 2d 737, 759 (S.D. Tex. 2006) ("The record reveals disputed fact issues material to determining whether plaintiffs and QuietFlex agreed that the piece-rate compensation would pay employees for their nonproductive time, precluding summary judgment as to this issue."); *Douglas v. Xerox Bus. Servs., LLC*, No. C12-1798-JCC, 2015 WL 10791972, at *6 (W.D. Wash. Dec. 1, 2015), *aff'd*, 875 F.3d 884 (9th Cir. 2017); *Arnold v. DirecTV, LLC*, No. 4:10-CV-352 JAR, 2017 WL 1196428, at *4–6 (E.D. Mo. Mar. 31, 2017); *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 10069108, at *29–30 (W.D. Wis. Apr. 11, 2011); *Olivo v. Crawford Chevrolet Inc.*, 799 F. Supp. 2d 1237, 1241 (D.N.M. 2011); *Brasfield v. Source Broadband Servs., LLC*, No. 2:08-CV-02092-JPM, 2010 WL 3222495, at *4 (W.D. Tenn. Aug. 16, 2010). Since here there is a fact issue about whether the parties agreed and understood that the compensation they received for unloading trucks was intended to cover the time they spent waiting to unload, and because a jury could draw inferences in favor of either party on this issue, summary judgment as to both parties is denied.

## II. Defendants' Motions to Strike Plaintiffs' Exhibits (Docs. 189 and 206) and Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 202)

Defendants move to strike many of the exhibits Plaintiffs attached to their Motion for

Partial Summary Judgment and their Response to Defendants' Motion for Summary Judgment. Docs. 189 and 206. Defendants argue that Plaintiffs' evidence includes uncertified deposition transcripts and unauthenticated spreadsheets. Out of an abundance of caution, in deciding those motions, the Court considered and relied on evidence that was properly authenticated or uncontested by Defendants. Thus, after considering Defendants' Motions, Plaintiffs' responses and the amended references to the certified video recording in which the relevant testimony occurs, Defendants' Motions are denied as moot.

Because Defendants' Motions are denied, Plaintiffs' Motion for Leave to File Reply, Doc. 202, is also denied.

### III. Defendants' Motion to Sever (Doc. 168)

*Standard of Review*

Federal Rule of Civil Procedure 21 provides,

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

The district court has broad discretion to sever claims and parties in a lawsuit. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). "Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neill*, 709 F.2d 361, 368 (5th Cir. 1983).

The Court should examine Fed. R. Civ. P. 20(a) to determine if the parties have been misjoined and should therefore be severed. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600

F.3d 516, 521 (5th Cir. 2010). Rule 20(a) permits individuals to "join in one action as plaintiffs if (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

The Fifth Circuit has not adopted a particular test to decide what is "the same transaction or occurrence" under Rule 20(a). *Lodsys, LLC v. Brother Intern. Corp.*, No. 2:11-cv-90-JRG, 2012 WL 760729, at *2 (E.D. Tex. Mar. 8, 2012). Several of its district courts have used the Eighth Circuit's "logically related" test for the "same transaction" requirement in *Moseley v. GMC*, 497 F.2d 1330, 1332-33 (8th Cir. 1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence"; "as used in Rule 20 [the terms] would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.") (citing 7 C. Wright, *Federal Practice and Procedure* § 1653 at 270 (1972)). *Id.* The "common question" can be satisfied by the presence of only a single one. *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 148 (N.D. Tex. 2010) ("Texas Rule 40 provides that defendants may be joined together in the same action only if (1) 'there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;' and (2) at least one 'question of law or fact common to all of them will arise in the action.'" (citing inter alia Tex. R. Civ. P. 40(a), and *7 C. Wright, A. Miller, & M. Kane,* Federal Practice & Procedure § 1653 (3d ed. 2002)).

In *In re Rolls Royce Corp.,* 775 F.3d 671, 680 n.40 (5th Cir. 2014), the Fifth Circuit acknowledged that while it has not yet adopted a test for severance, a number of its district courts

have applied the five-factor test in *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *1 (N.D. Sept. 26, 2012): "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." "'[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.'" *Id., quoting* Wright & Miller, *Fed. Prac. & Proc.* § 1689 (3d ed. 2004). "'Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Acevedo*, 600 F.3d at 521, *quoting United Mine Workers v. Gibbs*, 383 U.S. 714, 724 (1966).

### *Parties' Arguments*

Defendants argue that the case should be severed and each plaintiff's claims should be heard individually because they will be prejudiced by the sheer weight of the accusations. Defendants believe the amount of evidence needed to try all plaintiffs' individual claims would confuse the jury. Additionally, Defendants argue that Plaintiffs' claims should be heard individually because they do not arise from the same transaction or occurrence. In the alternative, Defendants request the Court divide Plaintiffs' claims by the type of worker they were. In response Plaintiffs point out that their claims involve many common questions of law and fact, and that they intend to rely on the same fact witnesses to prove all their claims. For example, whether Defendants routinely kept accurate time records is a general question of law relevant to all plaintiffs.

*Court's Decision*

After considering the motion, the response, the record, and the applicable law, the Court finds that it will not serve judicial economy to sever the claims into separate individual trials because there are many common questions of law and fact. Plaintiffs' claims arise from the same alleged transactions and occurrences, including Defendants' allegedly inadequate timekeeping practices and allegedly noncompliant compensation policies. The Court does not find that prejudice will be avoided through severance. Nor does the Court find a compelling reason for the plaintiffs to be divided into separate suits based on their job titles. The motion to sever is denied.

## IV. Conclusion

Accordingly, for the reasons stated above, the Court

ORDERS that Defendants' Motion for Summary Judgment on Plaintiffs' Claims (Doc. 170) is DENIED;

Plaintiffs' Motion for Partial Summary Judgment (Doc. 173) is DENIED;

Defendants' Motion for Partial Summary Judgment on Plaintiffs' Calculation of Damages (Doc. 114) is DENIED;

Plaintiffs' Cross Motion for Partial Summary Judgment on Plaintiffs' Calculation of Damages (Doc. 130) is DENIED;

Defendants' Motion to Strike Plaintiffs' Exhibits (Doc. 189) is DENIED;

Defendants' Motion to Strike Plaintiffs' Exhibits (Doc. 206) is DENIED;

Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 202) is DENIED;

and Defendants' Motion to Sever (Doc. 168) is DENIED.

SIGNED at Houston, Texas, this 25th day of January, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE